IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHRISTOPHER K. ANDERSEN,<br><br>Plaintiff,<br><br>v.<br><br>OLYMPUS AT DAYBREAK, JILLIAN PENMAN, and DOES 1-10,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:25-cv-00178-RJS-DBP<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

Now before the court is Plaintiff Christopher K. Andersen's Amended Motion for a Temporary Restraining Order and Order to Show Cause.[1] For the reasons explained below, the Motion is DENIED without prejudice.

## BACKGROUND[2]

On March 7, 2025, Andersen was served with a three-day notice to vacate his apartment.[3] Three days later, Andersen initiated this suit and filed a Motion for Temporary Restraining Order to enjoin his impending eviction.[4] The Complaint names the following defendants: Olympus at Daybreak (the name of Andersen's apartment complex),[5] Jillian Penman (a regional manager who works at the property management company servicing Olympus at Daybreak),[6] and

---

[1] Dkt. 14, *Plaintiffs Amended Motion for Temporary Restraining Order and Order to Show Cause*; Dkt. 14-1, *Plaintiffs Memorandum in Support of Amended Motion for Tempoary Restraining Order and Order to Show Cause* (*Amended Memorandum*).

[2] These facts are drawn from the Complaint, Dkt. 3, and Andersen's briefing, including attached exhibits.

[3] *Complaint* ¶ 36.

[4] Dkt. 2, *Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction and Memorandum in Support*.

[5] *Complaint* ¶ 8. It is unclear whether Olympus at Daybreak is the entity that owns the apartment complex.

[6] *Id.* ¶ 9.

1

"individuals currently unknown to Plaintiff who participated in or were complicit with the alleged acts of retaliation, discrimination, and wrongful eviction."[7] Andersen brings twelve claims against Penman and Olympus at Daybreak: 1) violation of the Fair Housing Act; 2) violation of the Americans with Disability Act; 3) violation of procedural due process under the Fourteenth Amendment; 4) breach of contract; 5) breach of the implied covenant of good faith and fair dealing; 6) abuse of process; 7) failure to train; 8) failure to supervise; 9) defamation; 10) negligent infliction of emotional distress; 11) intentional infliction of emotional distress; and 12) wrongful eviction.[8] One day after Andersen filed his Complaint and Motion, Andersen withdrew the Motion because he found alternative housing.[9]

On April 29, 2025, Andersen filed this renewed Motion for Temporary Restraining Order to enjoin Defendants from 1) further prosecuting an unlawful detainer action against him in state court;[10] 2) "Reporting, publishing, or disseminating any eviction notation or adverse housing record concerning Plaintiff"; and 3) attempting to collect an early termination fee.[11] He also seeks an Order "directing Defendants to appear and show why a preliminary injunction should not issue extending the relief set forth above throughout the pendency of this litigation."[12]

---

[7] *Id*. ¶ 10.

[8] *Complaint* ¶¶ 48–145.

[9] Dkt. 7, *Docket Text Order Vacating Hearing and Denying Without Prejudice Motion for TRO.*

[10] *See* State Court Complaint, *Olympus Daybreak v. Andersen et. al.*, No. 250902052, (Utah Third Judicial District Court March 13, 2025), dkt. 1.

[11] *Amended Memorandum* at 28.

[12] *Id*. Plaintiff has not effectuated service on either named Defendant but has separately filed a motion for alternate service. Dkt. 10, *Plaintiff's Motion for Alternative Service.*

**LEGAL STANDARD**

A preliminary injunction or temporary restraining order is "an extraordinary remedy never awarded as of right," and accordingly, "the movant must make a clear and unequivocal showing it is entitled to such relief."[13] Even then, the grant of such relief is "the exception rather than the rule."[14] To obtain a preliminary injunction or a temporary restraining order, a movant must show: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest."[15]

**ANALYSIS**

Andersen contends he is likely to succeed on the merits of his claims in this federal action, including his state-law wrongful eviction claim.[16] Yet at the same time, Andersen contends he will suffer irreparable harm without an injunction barring Olympus at Daybreak's unlawful detainer action.[17] Andersen cannot have it both ways. Andersen explicitly claims he is likely to succeed in this court in his wrongful eviction claim under Utah Code § 78B-6-802,[18] the same statute governing unlawful detainer actions. It follows that the same facts and arguments underlie both the federal and state court actions. If he is substantially likely to succeed in his federal suit, the same will be true of the state court action against him. At bottom, he cannot

---

[13] *Colorado v. EPA*, 989 F.3d 874, 883 (10th Cir. 2021) (internal citations and quotations omitted).

[14] *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (internal citation and quotations omitted).

[15] *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (citation omitted).

[16] *Amended Memorandum* at 7–16.

[17] *See generally*, *id*.

[18] *Id*. at 15.

claim that he is substantially likely to succeed in one but allowing the other to proceed will cause him irreparable harm.

Moreover, Andersen's federal claims are also based on facts that support his wrongful eviction claim (and, in turn, facts that will support his defense against his landlord's unlawful detainer action).  As evidence of the likelihood of success on his Fair Housing Act claim and Americans with Disabilities Act claim, Andersen cites his "eight written requests to repair a water-heater," a defect he claims Defendants ignored and which prompted them to encourage him to "consider moving."[19]  Andersen claims this conduct is "textbook retaliation and constructive eviction" under the FHA and ADA.[20]  If true, then it is unlikely Olympus at Daybreak's unlawful detainer action against him will be successful, and the consequences Andersen fears—weakened credit, inability to access the housing market, and "eviction-record stigma"[21]—will not come to pass.

Nevertheless, Andersen appears to argue the mere existence of an "active" unlawful detainer action against him causes irreparable injury even if it is "later dismiss[ed]."[22]  As support, Andersen offers the following quote from a 1989 case in the Southern District of New York purportedly concerning the mere existence of unlawful detainer actions: "[such actions] permanently impair[] access to decent housing."[23]  This quote does not exist in the case cited by Andersen.  The court has serious concerns about the resources Andersen consulted when drafting

---

[19] *Id.* at 8–9.

[20] *Id.* at 9.

[21] *Id.* at 16–17, 19.

[22] *Id.* at 19.

[23] *Id.* at 19 (quoting *McNeill v. NYC Hous. Auth.*, 719 F. Supp. 233, 254 (S.D.N.Y. 1989)).

his materials, and any further instances of misquotations or other deceits upon the court will result in sanctions under Rule 11.[24]

While the case Andersen quotes from explains that the threat of eviction coupled with "the realistic prospect of homelessness" may constitute irreparable harm,[25] nowhere does it suggest the *dismissal* of an unlawful detainer action in favor of the tenant nevertheless causes irreparable harm. In any case, Andersen admits he "voluntarily surrendered" his apartment at Olympus at Daybreak[26] and thereafter "successful[ly] procure[d] of alternative housing."[27] In other words, he has not shown that he faces "a realistic prospect of homelessness."[28] And although he complains that it would be difficult and costly to remove his name from "tenant-screening" databases even if he prevails in state court,[29] which he argues could impact his future access to housing, the fact that his name can be removed from these databases is proof that his complained-of injury is not irreparable absent an injunction. Beyond that, the possible risk of having difficulty finding housing at some point in the future does not justify extraordinary relief under Rule 65. After all, "a remote, future injury will not do—rather, [Andersen] must show 'that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm.'"[30] Remarkably, Andersen essentially concedes that

---

[24] *See* Fed. R. Civ. P. 11(b) (imposing same standard on both attorneys and "unrepresented part[ies]"); *see also Riches v. Province*, No. 10-cv-02086-BNB, 2010 WL 4220552, at * 5 (D. Colo. Oct. 20, 2010) ("In order to comply with Rule 11 and avoid sanctions thereunder, a *pro se* party's actions must be objectively reasonable . . . A pattern of groundless and vexatious litigation will support an order enjoining a litigant from filing any claims without first seeking prior leave of court.") (internal citations omitted).

[25] *McNeill*, 719 F. Supp. at 254.

[26] Dkt. 14-2, *Amended Declaration of Christopher K. Andersen in Support of Amended Motion for Temporary Restraining Order and Order to Show Cause* ¶ 7.

[27] *Amended Memorandum* at 1.

[28] *McNeill*, 719 F. Supp. at 254.

[29] *Amended Memorandum* at 6–7, 13.

[30] *Schiermeyer on Behalf of Blockchain Game Partners, Inc. v. Thurston*, 746 F. Supp. 3d 1188 (D. Utah 2024) (quoting *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (alterations in original)).

any effects he may feel as a result of the unlawful detainer action action are not imminent by stating "Defendants have almost entirely failed to prosecute" the unlawful detainer case.[31]

Andersen also contends that the stress of the state court action affects his mental health, and an injunction is required to prevent further irreparable damage.[32] Although the court is mindful of the mental toll litigation can exact on affected parties, stress does not constitute the kind of irreparable harm contemplated by Rule 65. Andersen argues a Fourth Circuit case "recognize[d] adverse mental-health impacts as irreparable injury," but the Circuit recognized no such proposition in that case.[33] The cited portion of the opinion lists the elements of an intentional infliction of emotional stress claim. It says nothing about whether mental health impacts are grounds for issuing injunctive relief under Rule 65. Accordingly, the court declines to issue extraordinary relief on account of Andersen's belief that his landlord's action against him is stressful and may result in negative consequences.

Finally, Andersen also claims that, absent an injunction, there will be irreparable damage in the form of a "chilling effect" on the public's ability to exercise important civil rights.[34] But this is irrelevant to the irreparable injury analysis. It may support Andersen's belief that an injunction would be in the public interest, but Andersen is free to pursue his federal claims and defend his civil rights in this action notwithstanding the unlawful detainer action he faces in state court. Allowing the action to proceed will not irreparably harm his ability to exercise his civil rights. Under Rule 65, the court may not issue an injunction if the movant cannot demonstrate

---

[31] *Amended Memorandum* at 3.

[32] *Id.* at 17.

[33] The court reiterates that if Andersen files with the court any further legal misrepresentations in future communications, he will be subject to sanctions under Rule 11.

[34] *Amended Memorandum* at 17.

irreparable injury absent the injunction.[35]  Because Andersen has failed to do so here, the court must deny his Motion.

For the reasons stated above, the court declines to opine on the likelihood of the success on the merits of Andersen's claims.  However, also fatal to Andersen's Motion is that he nowhere demonstrates he would be entitled to the relief he now seeks even if he prevails in this action.  For example, under the Fair Housing Act, "the court can grant injunctive relief based on defendants' liability for past violations and the 'vestiges of discrimination which remain,'"[36] but the "injunctive relief must be narrowly tailored to remedy the harm shown."[37]  Here, the relief Andersen seeks—halting a state court action, preventing the dissemination of information harmful to Andersen's credit and housing opportunities, and enjoining any efforts "attempting to collect or pursue" early-termination fees, among other fees, associated with his lease—is wide in scope and does not purport to redress vestiges of discrimination.

The same is true for the injunctive relief Andersen may seek under the ADA, which includes "an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities" or an order "requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods . . . ."[38]  Andersen's requested is entirely different in kind.  Because Andersen fails to demonstrate how any of his claims, if successful, would give rise to the relief he now seeks, the court declines to issue any such relief on a preliminary or temporary basis, either.

---

[35] *Jewell*, 839 F.3d at 1281.

[36] *United States v. Sturdevant*, No. 07-cv-2233-KHV, 2009 WL 10689852, *2 (D. Kan. Dec. 11, 2009) (citing *United States v. Scott,* 809 F. Supp. 1404, 1408 (D. Kan. 1992)).

[37] *Sturdevant*, 2009 WL 10689852 at*2 (citing *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 961–62 (10th Cir. 2002)).

[38] 42 U.S.C. § 12188(a)(2).

## CONCLUSION

For the foregoing reasons, Andersen's Motion is DENIED.[39]

SO ORDERED this 13th day of May 2025.

BY THE COURT:

_____
ROBERT J. SHELBY
Chief United States District Judge

---

[39] Dkt. 14.